**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

SAMUEL VIGIL, as Personal
Representative of the Estate of
Jacqueline Vigil,

      Plaintiff,

v.                                            Civ. No. 1:21-cv-00147 MIS/KK

Albuquerque Mayor TIM KELLER
in his individual and official capacity,
THE CITY OF ALBUQUERQUE,
Albuquerque Police Officer CODY TAPIE
in his individual and official capacity,
Officer JOHN DOE in his individual
and official capacity,

      Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
<u>DEFENDANTS' MOTION TO DISMISS</u>**

THIS MATTER is before the Court on "Defendants City of Albuquerque, Tim Keller and Cody Tapie's Motion to Dismiss Plaintiff's Amended Complaint" ("Motion") [ECF No. 17], filed April 2, 2021, by Defendants City of Albuquerque, Tim Keller, and Cody Tapie (collectively, "Defendants"). Plaintiff Samuel Vigil ("Plaintiff"), as the personal representative of the estate of Jacqueline Vigil, responded and Defendants replied. ECF Nos. 21, 23. Defendants seek dismissal of all claims in Plaintiff's Amended Complaint [ECF No. 15], pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). ECF No. 17 at 1. Upon due consideration of the parties' submissions, the Amended Complaint, the relevant law, and the oral argument of the parties, the Court will **GRANT IN PART** and **DENY IN PART** the Motion.

## FACTUAL BACKGROUND[1]

This case arises from the death of Jacqueline Vigil ("Ms. Vigil"), who was tragically gunned down in her driveway by Luis Talamantes-Romero ("Talamantes-Romero") in the early hours of the morning on November 19, 2019, in Albuquerque, New Mexico. ECF No. 15 at 1, 4, ¶¶ 1, 20. Talamantes-Romero was with an associate, Isaac Ramirez-Soto ("Ramirez-Soto"), at the time of the murder. *Id.* at 4, ¶ 21.

In 2018, Defendant City of Albuquerque enacted—and Defendant Albuquerque Mayor Tim Keller ("Defendant Keller") signed into law—a resolution strengthening Albuquerque's status as an immigrant-friendly city. *Id.* at 7, ¶ 38. Pursuant to the resolution, the city of Albuquerque remains prohibited from using any city resources to enforce or assist in enforcing federal immigration law. *Id.* The resolution bars city employees, including police officers, from "detecting, apprehending, identifying, investigating, arresting, detaining, or continuing to detain a person based on the individual's immigration status or the belief that the person has committed a violation of immigration law." *Id.* The resolution also prevents city employees from honoring in any way a federal immigration detainer or from collecting information about any person's national origin or immigration status. *Id.* Employees or any third person acting on the city's behalf cannot initiate any inquiry regarding, or collect in any way, information regarding the citizenship, immigration status, place of birth, or national origin of any person. *Id.* at 7, ¶ 39. Additionally, the resolution states that the "[c]ity shall not disclose information that the [c]ity currently possesses regarding place of birth, religion, or national origin [of any

---

[1] The Court accepts the truth of all well-pleaded factual allegations in Plaintiff's Amended Complaint and draws all reasonable inferences in Plaintiff's favor for the purposes of this Motion.

person] . . . absent a valid judicial warrant for such information or as otherwise required by law." *Id.*

Talamantes-Romero is a member of Juaritos Maravilla, a street gang based out of Juarez, Mexico. *Id.* at 10, ¶ 52. Prior to the enactment of the resolution, Talamantes-Romero, an undocumented immigrant, was deported twice and convicted of and spent time in prison for numerous criminal offenses. *Id.* at 1–2, 4–6, ¶¶ 2, 22–37. He was deported again in 2019, but soon thereafter, unlawfully re-entered the country to return to Albuquerque to live with his two sisters. *Id.* at 6–7, ¶¶ 37, 40.

After Talamantes-Romero returned to Albuquerque in 2019, he committed numerous criminal offenses. In September 2019, Talamantes-Romero broke into a vehicle in a hotel parking lot in Albuquerque and stole a gun from that vehicle. *Id.* at 8, ¶ 44. Defendant Albuquerque Police Department ("APD") Officer John Doe ("Defendant Doe") responded to the crime scene. *Id.* Talamantes-Romero left forensic evidence at the crime scene, including fingerprints from the car and a drop of blood that returned as a match to Talamantes-Romero in the Federal Bureau of Investigations' Combined DNA Index System. *Id.* at 8, ¶ 45. This evidence provided Defendant Doe and APD with notice that Talamantes-Romero was back in Albuquerque. *Id.* at 8–9, ¶ 45.

On October 13, 2019, Talamantes-Romero and Eduardo Aguilar ("Aguilar"), a fellow member of the Juaritos Maravilla gang, got into a confrontation with a man in an Albuquerque parking lot. *Id.* at 9, ¶ 48. As the man entered his vehicle and drove away from the altercation, Talamantes-Romero or Aguilar fired a gun at the man. *Id.* Talamantes-Romero and Aguilar then got into a vehicle and followed the man for several miles while continuing to shoot at him, and the man's car was struck by at least one bullet.

*Id.* APD, including Defendant APD Officer Cody Tapie ("Defendant Tapie"), responded to this incident and "knew or should have known" that Talamantes-Romero was the perpetrator. *Id.* However, a criminal complaint for this incident was not filed until almost a year after the date of the incident. *Id.* at 2–3, 13–14, ¶¶ 6, 65.

The same day—October 13, 2019—Aguilar broke up with a girlfriend after an argument in which she expressed her dislike for Talamantes-Romero and said that she did not want Aguilar to associate with Talamantes-Romero. *Id.* at 10, ¶ 54. Following this argument, the ex-girlfriend heard a loud bang and discovered that a rock had broken a window to her young child's room. *Id.* She provided evidence to APD to suggest Talamantes-Romero and Aguilar had broken the window. *Id.* at 10–11, ¶¶ 54–55. While APD, including Defendant Tapie, responded to this call and generated a case number, a criminal complaint against Talamantes-Romero for this incident was never filed. *Id.* at 11, ¶ 55.

On November 15, 2020, Talamantes-Romero committed another automobile burglary. *Id.* at 11, ¶ 57. Despite knowledge of these three incidents, APD did not contact federal immigration authorities regarding Talamantes-Romero, and thus did not report that he had unlawfully re-entered the United States and had allegedly committed multiple criminal offenses. *Id.* at 9, 10, ¶¶ 46–47, 51.

On November 19, 2019—the date of the incident underlying this action—Talamantes-Romero committed multiple automobile burglaries within 24 hours. *Id.* at 14, ¶ 69. Talamantes-Romero and Ramirez-Soto cruised around Albuquerque while drinking alcohol and consuming cocaine, "looking for people to prey upon." *Id.* Talamantes-Romero crashed the vehicle he was driving, likely due to his abuse of alcohol and drugs.

4

*Id.* at 14, ¶ 70. His tire was leaking air, but he and Ramirez-Soto managed to drive to a nearby apartment complex and steal a replacement tire from a vehicle in the apartment complex's parking lot. *Id.*

At approximately 4:15 a.m., a man called 911 and reported two Hispanic males were breaking into his vehicle. *Id.* at 15, ¶ 71. The victim confronted the two men from a balcony, and one of the men said, "grab the gun" in Spanish. *Id.* The victim then observed one of the men retrieve a pistol and look directly at him, at which time the victim backed away from the balcony. *Id.* The two men entered a vehicle and fled the scene. *Id.* APD responded to the victim's 911 call the following day. *Id.* at 15, ¶ 72.

Approximately an hour after this incident, Talamantes-Romero observed Ms. Vigil get into her car. *Id.* at 15, ¶ 73. He then exited his vehicle, threatened Ms. Vigil with a gun, and after she honked her car horn to seek help from her husband, Talamantes-Romero shot Ms. Vigil in the head at close range. *Id.* Talamantes-Romero ran back to the getaway car, and Ramirez-Soto drove them away from the scene. *Id.* at 15, ¶ 74. Ms. Vigil passed away from her injuries. *Id.* at 16, ¶ 75.

## PROCEDURAL BACKGROUND

Plaintiff filed this action asserting three counts: a 42 U.S.C. § 1983 claim against Defendant Tapie and Defendant Doe, in their individual and official capacities, for violations of the Procedural and Substantive Due Process Clauses of the Fourteenth Amendment to the United States Constitution (Count I); a 42 U.S.C. § 1983 claim against Defendant Keller, in his individual and official capacities, and Defendant City of Albuquerque for a violation of the Procedural Due Process Clause of the Fourteenth Amendment to the United States Constitution (Count II); and a battery claim pursuant to

the New Mexico Tort Claims Act, N.M. Stat. Ann. §§ 41-4-1 *et seq.* (1978), against Defendant Tapie and Defendant Doe, in their individual and official capacities, and Defendant City of Albuquerque (Count III). ECF No. 1-1 at 15–20; ECF 15 at 18–25.

On April 2, 2021, Defendants filed the instant Motion seeking dismissal of all of Plaintiff's claims pursuant to Rule 12(b)(6). ECF No. 17 at 1. Plaintiff filed his Response on May 7, 2021, and Defendants filed their Reply on May 21, 2021. ECF Nos. 21, 23. A hearing on the merits of the Motion was held before this Court on November 29, 2022. ECF No. 28.

## LEGAL STANDARDS

### I.    Motion to Dismiss

Pursuant to Rule 12(b)(6), a party may move for dismissal if the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not impose a probability requirement but demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. Although the court must accept the truth of all properly alleged facts and draw all reasonable inferences in the plaintiff's favor, the plaintiff still "must nudge the claim across the line from conceivable or speculative to plausible." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021).

## II.    Qualified Immunity

The Civil Rights Act of 1871, codified at 42 U.S.C. § 1983 ("Section 1983"), provides in relevant part that "[e]very person who, under color of any statute . . . of any State . . . subjects . . . any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." Section 1983 creates a federal cause of action for damages to vindicate alleged violations of federal law committed by individuals acting "under color of state law." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). The statute "creates no substantive civil rights, only a procedural mechanism for enforcing them." *Wilson v. Meeks*, 52 F.3d 1547, 1552 (10th Cir. 1995). "In defending against § 1983 claims . . . an official may plead an affirmative defense of qualified immunity." *Maresca v. Bernalillo Cty.*, 804 F.3d 1301, 1307 (10th Cir. 2015).

Qualified immunity shields a government official sued in their individual capacity from a money damages award "unless the official violated a statutory or constitutional right, and the right was clearly established at the time of the challenged conduct." *Lane v. Franks*, 573 U.S. 228, 243 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)) (internal quotation marks omitted). In other words, it protects "all but the plainly incompetent or those who knowingly violate the law." *al-Kidd*, 563 U.S. at 743 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Thus, to survive a motion to dismiss based on qualified immunity, "plaintiffs must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008). The Court may address these two inquiries in any order. *Pearson v. Callahan*,

555 U.S. 223, 236 (2009). However, the Court must grant qualified immunity if the plaintiff

fails to satisfy either prong. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).

## DISCUSSION

I.   **Defendant Tapie, Defendant Doe, and Defendant Keller are entitled to qualified immunity.**

In Count I, Plaintiff sets forth a Section 1983 claim against Defendant Tapie and

Defendant Doe, in their individual capacities, for violations of Procedural and Substantive

Due Process pursuant to the Fourteenth Amendment to the United States Constitution,

and in Count II, a Section 1983 claim against Defendant Keller, in his individual capacity,

for a violation of Procedural Due Process under the Fourteenth Amendment to the United

States Constitution. Defendant Tapie and Defendant Keller move for dismissal of these

claims. ECF No. 17 at 5–17. They maintain that they are entitled to qualified immunity

because their conduct did not violate a constitutional right, and the law was not clearly

established at the time of any alleged constitutional violation. *Id.* Plaintiff disputes these

arguments. ECF No. 21 at 18–22.

Additionally, Defendants argue that although Plaintiff has yet to identify or serve

Defendant Doe, the Court may sua sponte consider whether Plaintiff states a claim for

relief against Defendant Doe, including whether he is also entitled to qualified immunity.

ECF No. 17 at 2 n.2. Indeed, "[a]lthough dismissals under Rule 12(b)(6) typically follow a

motion to dismiss, giving plaintiff notice and opportunity to amend his complaint, a court

may dismiss sua sponte when it is patently obvious that the plaintiff could not prevail on

the facts alleged, and allowing him an opportunity to amend his complaint would be futile."

*Hall v. Bellmon*, 935 F.2d 1106, 1109–10 (10th Cir.1991) (citing *McKinney v. Oklahoma*,

925 F.2d 363, 365 (10th Cir. 1991) (internal quotation marks omitted). During oral argument, Plaintiff did not object to Defendants' request. As such, the Court determines whether Defendant Tapie, Defendant Doe, and Defendant Keller are entitled to qualified immunity.

### A. The Amended Complaint does not allege a plausible Procedural Due Process violation.

#### 1. Applicable Law

The Fourteenth Amendment to the United States Constitution states that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV. The Due Process Clause has been interpreted to provide two distinct guarantees: Procedural Due Process and Substantive Due Process. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). Procedural Due Process "ensures the state will not deprive a party of [life, liberty, or] property without engaging fair procedures to reach a decision . . . ." *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000).

"The essence of procedural due process is the provision to the affected party of *some* kind of notice and . . . *some* kind of hearing." *Moore v. Bd. of Cty. Comm'rs*, 507 F.3d 1257, 1259 (10th Cir. 2007) (quoting *Zinermon*, 494 U.S. at 127) (internal quotation marks omitted). To determine whether an individual's Procedural Due Process rights were violated, the Court engages in a two-step inquiry: "(1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process." *Montgomery v. City of*

*Ardmore*, 365 F.3d 926, 935 (10th Cir. 2004) (quoting *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 577 (10th Cir. 1996)).

Protected *property* interests typically take the form of "actual ownership of real estate, chattels, or money." *Board of Regents v. Roth*, 408 U.S. 564, 571–72 (1972). However, certain benefits provided by the government can form the basis of a protected property interest. *Id.* at 576–77. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* at 577. Such entitlements "are not created by the Constitution[,] [r]ather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ." *Id.* However, "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock, Colo. v. Gonzale*s, 545 U.S. 748, 756 (2005). Hence, "when analyzing whether a protected interest exists, [the Court] focuses on whether there are 'specific directives *to the decisionmaker* that if the regulations' substantive predicates are present, a particular outcome must follow.'" *Brown v. Eppler*, 725 F.3d 1221, 1226–27 (10th Cir. 2013) (quoting *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 463 (1989)); *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence*, 927 F.2d 1111, 1116 (10th Cir. 1991) ("[A plaintiff must] demonstrate that there is a set of conditions the fulfillment of which would give rise to a legitimate expectation to [the alleged benefit].").

### 2.  Analysis

The Court must determine whether Plaintiff has alleged that Ms. Vigil possessed a protected interest subject to Due Process protection. As to Defendant Tapie and

Defendant Doe, Plaintiff argues they deprived Ms. Vigil of protected property benefits afforded by a New Mexico state statute—New Mexico Statutes Annotated § 29-1-1. ECF No. 21 at 5. Specifically, Plaintiff alleges Ms. Vigil was deprived of her rights to have APD competently investigate criminal activities, file a complaint against and apprehend Talamantes-Romero, and "act in a reasonable fashion" as described by said statute. *See* ECF No. 15 at 19, ¶ 92; ECF No. 21 at 11. The statute at issue provides:

> It is hereby declared to be the duty of every sheriff, deputy sheriff, constable and every other peace officer to investigate all violations of the criminal laws of the state which are called to the attention of any such officer or of which he is aware, and it is also declared the duty of every such officer to diligently file a complaint or information, if the circumstances are such as to indicate to a reasonably prudent person that such action should be taken, and it is also declared his duty to cooperate with and assist the attorney general, district attorney or other prosecutor, if any, in all reasonable ways. Such cooperation shall include the prompt reporting of all arrests for liquor law violations at licensed liquor establishments to the department of alcoholic beverage control. Failure to perform his duty in any material way shall subject such officer to removal from office and payment of all costs of prosecution.

N.M. Stat. Ann. § 29-1-1 (1978). In sum, the statute creates duties for specific law enforcement officers to: (1) investigate crimes; (2) file a complaint or information if the circumstances dictate; and (3) cooperate with certain prosecutors.

The statute, however, does not create any entitlements that can form the basis of a protected property interest. The Supreme Court's decision in *Castle Rock* forecloses Plaintiff's assertion that this statute establishes protected benefits. 545 U.S. at 758–66. There, the Supreme Court explained that a "well established tradition of police discretion has long coexisted with" laws that may appear to impose mandatory duties on police. *Id.*

at 760. The Supreme Court then declared that "the benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its 'substantive' manifestations." *Id.* at 768.

As such, even if the New Mexico state statute's language could be interpreted to include mandatory obligations, the duty to investigate crimes, file a complaint or information, or cooperate with certain prosecutors necessarily involves a significant level of law enforcement discretion. *See id.* at 760 (observing that "[i]n each and every state there are longstanding statutes that, by their terms, seem to preclude nonenforcement by the police" but that, "for a number of reasons, including their legislative history, insufficient resources, and sheer physical impossibility," such statutes "cannot be interpreted literally" and "clearly do not mean that a police officer may not lawfully decline to . . . make an arrest"). Such discretion precludes any "legitimate claim of entitlement."[2] *Id.* at 756 (quoting *Roth*, 408 U.S. at 577).

Additionally, Plaintiff must allege inadequate process to assert a Procedural Due Process violation. Plaintiff argues that although there is a remedy under New Mexico tort

---

[2] Several other courts to consider the issue have reached to the same conclusion. *See, e.g., Harrington v. Cnty. of Suffolk*, 607 F.3d 31, 35 (2d Cir. 2010) (concluding that the plaintiffs did not have a protected property interest in an investigation into their son's death, because "the duty to investigate criminal acts (or possible criminal acts) almost always involves a significant level of law enforcement discretion," which "precludes any 'legitimate claim of entitlement' to a police investigation"); *Vinyard v. Wilson*, 311 F.3d 1340, 1356 (11th Cir. 2002), (finding that the plaintiff could not show a procedural due process violation because there is no "federal or state court decision, statute, regulation or other source of law that gives [the plaintiff] an entitlement to an internal investigation by the Sheriff's Office of her complaints of police brutality"); *Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1045 (9th Cir. 1994) (finding that police officers do not have an affirmative duty to investigate crimes in a particular manner or to protect one citizen from another); *Merriweather v. Stringer*, No. 2:21-CV-145, 2021 WL 6137515, at *6 (M.D. Ala. Dec. 9, 2021) (finding there is no constitutionally protected property interest in the investigation of plaintiff's assault claim or the arrest of his alleged assailants by police department), *report and recommendation adopted*, 2021 WL 6137389 (M.D. Ala. Dec. 29, 2021).

law, *i.e.*, the New Mexico Tort Claims Act, N.M. Stat. Ann. §§ 41-4-1 *et seq.* (1978), such post-deprivation remedy is inadequate because it caps damages. ECF No. 21 at 10. Typically, "[i]f a state actor's harmful conduct is unauthorized and thus could not be anticipated pre-deprivation, then an adequate post-deprivation remedy—such as a state tort claim—will satisfy due process requirements." *Myers v. Koopman*, 738 F.3d 1190, 1193 (10th Cir. 2013). Although Plaintiff argues the New Mexico Tort Claims Act is inadequate because it caps damages, *see* N.M. Stat. Ann. § 41-4-19 (1978), Plaintiff has not established that as a result he is denied reasonable notice and a meaningful opportunity to be heard. *See, e.g., Boyd v. Bulala*, 877 F.2d 1191, 1194 (4th Cir. 1989) (finding that a Virginia state statute that created similar damages caps for certain medical malpractices actions "offends no provision of the Federal Constitution"); *see also Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of [procedural] due process is the opportunity to be heard at a meaningful time and in a meaningful manner."). Accordingly, Plaintiff fails to allege inadequate process as the New Mexico Tort Claims Act provides a suitable post-deprivation remedy.

As to Defendant Keller, Plaintiff alleges he deprived Ms. Vigil of her entitlement to the aid of United States Immigration and Customs Enforcement ("ICE"). *See* ECF No. 21 at 17. ICE is a federal law enforcement agency under the United States Department of Homeland Security whose mission is to "[p]rotect America through criminal investigations and enforcing immigration laws to preserve national security and public safety." *See id.* Again, *Castle Rock* forecloses this theory. 545 U.S. at 758–66. The aid of any law enforcement agency, including ICE, necessarily involves a level of significant discretion

so as to preclude a "legitimate claim of entitlement." *See id.* at 756. Thus, Plaintiff fails to allege the deprivation of a protected property interest by Defendant Keller.

In conclusion, Plaintiff fails to allege a Procedural Due Process violation against Defendant Tapie, Defendant Doe, or Defendant Keller.

### B. The Amended Complaint does not allege a plausible Substantive Due Process violation.

#### 1. Applicable Law

Substantive Due Process "ensures the state will not deprive a party of [a fundamental right] for an arbitrary reason regardless of the procedures used to reach that decision." *Hyde Park Co.*, 226 F.3d at 1210. Generally, the Substantive Due Process Clause "does not require the state to protect life, liberty, and property of its citizens against invasion by private actors." *Estate of B.I.C. v. Gillen*, 710 F.3d 1168, 1173 (10th Cir. 2013). There are two recognized exceptions to this rule. *Id.* First, state officials may be liable for the acts of private parties when the state has assumed a special relationship with and control over an individual. *Id.* Second, state officials can be liable for the acts of private parties where those officials created the very danger that caused the harm. *Id.*

A plaintiff must allege two preconditions to invoke this second exception, also known as the the state-created danger theory: "first, the state actor took an affirmative action, and, second, that action led to private violence injuring the plaintiff." *Estate of Reat v. Rodriguez*, 824 F.3d 960, 965 (10th Cir. 2016). If these preconditions are met, a plaintiff must then establish the following:

> (1) the charged state . . . actor[ ] created the danger or increased plaintiff's vulnerability to the danger in some way; (2) plaintiff was a member of a limited and specifically definable group; (3) defendant['s] conduct put plaintiff at

substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) defendants acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, is conscience shocking.

*Id.* (quoting *Estate of B.I.C*, 761 F.3d at 1106). The Tenth Circuit has "identified the 'classic' danger creation case to be *Wood v. Ostrander*, 879 F.2d 583 (9th Cir. 1989), where police officers impounded the plaintiff's car and abandoned her in the middle of the night in a high crime area where she was raped." *Moore v. Guthrie*, 438 F.3d 1036, 1042 (10th Cir. 2006).

### 2. Analysis

First, the Court must determine whether Plaintiff has alleged the necessary preconditions to establish a Procedural Due Process violation under a state-created danger theory against Defendant Tapie and Defendant Doe. Plaintiff alleges that Defendant Tapie and Defendant Doe increased Ms. Vigil's vulnerability to danger at the hands of Talamantes-Romero by "not putting out information to warn the public about Talamantes-Romero," failing "to put out an [all-points bulletin] following the auto burglary and aggravated assault that occurred an hour before the attempted car theft and murder of Jacqueline Vigil," and failing to adequately investigate, apprehend, and detain Talamantes-Romero. *See* ECF No 15 at 20–21, ¶¶ 99–103.

To establish affirmative action, the plaintiff must allege that a state actor "affirmatively act[ed] to create, or increase[] a plaintiff's vulnerability to, danger from private violence." *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001); *Rivera v. Rhode Island*, 402 F.3d 27, 37 (1st Cir. 2005) ("[M]erely rendering a person more vulnerable to risk does not create a constitutional duty to protect."). The affirmative conduct requirement

usually involves conduct imposing "an immediate threat of harm, which by its nature has a limited range and duration" and is "directed at a discrete plaintiff rather than the public at large." *Ruiz v. McDonnell*, 299 F.3d 1173, 1183 (10th Cir. 2002). Inaction or the mere failure to protect someone in a position of danger not caused by the state is insufficient. *Matthews v. Bergdorf*, 889 F.3d 1136, 1150 (10th Cir. 2018); *Hernandez v. Ridley*, 734 F.3d 1254, 1259 (10th Cir. 2013).

Applying the state-created danger theory to the facts of this case, the Court determines that Plaintiff fails to allege any affirmative conduct by Defendant Tapie or Defendant Doe that increased Ms. Vigil's vulnerability to danger at the hands of Talamantes-Romero. Plaintiff's allegations that Defendant Tapie and Defendant Doe failed to act or protect Ms. Vigil from danger not created by the state does not rise to the level of affirmative conduct required. Additionally, Plaintiff fails to allege that any action or inaction taken by Defendant Tapie or Defendant Doe was directed at Ms. Vigil specifically rather than the public at large. As quoted previously, "the benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its 'substantive' manifestations." *Town of Castle Rock*, 545 U.S. at 768; *see also DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989)).

In conclusion, Plaintiff fails to allege a plausible Substantive Due Process violation against Defendant Tapie and Defendant Doe.

### C. The law was not clearly established at the time of the alleged constitutional violations.

#### 1. Applicable Law

A right is clearly established when, at the time of the challenged conduct, "the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014). "A plaintiff can demonstrate that a constitutional right is clearly established by reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits." *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008) (quoting *Anderson v. Blake*, 469 F.3d 910, 914 (10th Cir. 2006) (internal quotation marks omitted)). Although the plaintiff is not required to identify a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. 731 at 741. Clearly established law cannot be defined "at a high level of generality"; rather, it must be particularized to the facts of the case. *Id.* at 742. But "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015) (quoting *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007)). The dispositive question is whether the unlawfulness of the official's actions was apparent in light of pre-existing law. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

#### 2. Analysis

The Court cannot locate—nor does Plaintiff cite to—clearly-established law that would have put Defendants on notice that their conduct would give rise to liability under the Fourteenth Amendment to the United States Constitution. Instead, Plaintiff concedes

that he cannot "locate[] a case in this circuit or any other that squarely addresses the factual scenario presented" here. ECF. No. 21 at 20. Instead, Plaintiff argues that "New Mexico State law that has been cited to at length is [] well established" to have provided Defendants with notice. *Id.* As Plaintiff cannot provide *federal* case law, he fails the second prong of the qualified immunity inquiry. As such, Defendant Keller, Defendant Tapie, and Defendant Doe, in their individual capacities, are entitled to qualified immunity on the Section 1983 claims. The Court, thus, dismisses the individual capacity claims in Count I and Count II of Plaintiff's Amended Complaint for failure to state a claim and based on qualified immunity.

## II. Plaintiff has failed to establish municipal liability as Plaintiff fails to allege an underlying constitutional violation.

Further, Plaintiff alleges in Count I, a Section 1983 claim against Defendant Tapie and Defendant Doe, in their official capacities, for violations of Procedural and Substantive Due Process pursuant to the Fourteenth Amendment to the United States Constitution, and in Count II, a Section 1983 claim against Defendant Keller, in his official capacity, and Defendant City of Albuquerque for a violation of Procedural Due Process pursuant to the Fourteenth Amendment to the United States Constitution. Defendant Tapie, Defendant Keller, and Defendant City of Albuquerque move for dismissal of these claims. ECF No. 17 at 18–22. Plaintiff opposes dismissal. ECF No. 21 at 22–25.

Additionally, Defendant Tapie and Defendant Keller argue the official capacity claims against the individual defendants should be dismissed as duplicative of the claims against Defendant City of Albuquerque. ECF No. 17 at 18–19. Specifically, they contend that naming a particular official in their official capacity is the same as naming the

municipality itself. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Typically, "[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* Thus, courts routinely dismiss the official capacity claims as redundant when a plaintiff chooses to sue the municipality and the municipal officials in their official capacities. *Buck v. City of Albuquerque*, No. 4-CV-1000, 2006 WL 8443817, at *2 (D.N.M. Aug. 8, 2006) (collecting cases). During oral argument, Plaintiff did not object to dismissal of the official capacity claims against Defendant Tapie, Defendant Doe, and Defendant Keller. Accordingly, the Court will dismiss the official capacity claims against Defendant Tapie, Defendant Doe, and Defendant Keller as duplicative of the claims against Defendant City of Albuquerque.

Consequently, the Court will consider whether Plaintiff has stated a claim of municipal liability against Defendant City of Albuquerque based upon violations of Procedural and Substantive Due Process pursuant to the Fourteenth Amendment to the United States Constitution.

### A. Applicable Law

In *Monell v. Department of Social Services*, the Supreme Court held municipalities to be "persons" subject to suit under Section 1983. 436 U.S. 658, 690 (1978). Although a municipality cannot be held liable simply because it employs a tortfeasor—or in other words under a respondeat superior theory—it can be liable for its "*own* illegal acts . . . that is, acts which the municipality has officially sanctioned or ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479–80 (1986); *Monell*, 436 U.S. at 691. Thus, a municipality may be accountable if deprivation of a constitutional right is inflicted pursuant to the

"execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy . . . ." *Monell*, 436 U.S. at 694; *see also Pembaur*, 475 U.S. at 479 ("The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.").

To state a claim for municipal liability, a plaintiff must allege: "(1) a constitutional violation (2) caused by (3) a municipal policy or custom." *Frey v. Town of Jackson, Wyo.*, 41 F.4th 1223, 1238 (10th Cir. 2022). A municipal policy or custom may take the form of (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused. *Id.* at 1238 n.12 (quoting *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010)).

## B. Analysis

Plaintiff alleges that Defendant City of Albuquerque's resolution strengthening Albuquerque's status as an immigrant-friendly city is a formal policy statement that forms the basis of their *Monell* claim. ECF No. 15 at 19, 21–23, ¶¶ 95, 106–12. However, as discussed previously, Plaintiff fails to adequately allege deprivation of a constitutional

right. Accordingly, the Court dismisses the official capacity claims in Count I and Count II of Plaintiff's Amended Complaint for failure to state a claim for municipal liability.

### III.   The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claim.

Lastly, in Count III, Plaintiff brings a battery claim pursuant to the New Mexico Tort Claims Act, N.M. Stat. Ann. §§ 41-4-1 *et seq.* (1978), against Defendant Tapie, Defendant Doe, and Defendant City of Albuquerque. ECF No. 15 at 23–25. Because the Court dismisses all the federal claims in Plaintiff's complaint, specifically Counts I and II in their entirety, the Court declines to exercise supplemental jurisdiction over the state law claim in Count III pursuant to 28 U.S.C. § 1367(c)(3). Therefore, the Court dismisses Count III without prejudice to allow Plaintiff to re-file in state court.

### CONCLUSION

For the foregoing reasons, "Defendants City of Albuquerque, Tim Keller and Cody Tapie's Motion to Dismiss Plaintiff's Amended Complaint" [ECF No. 17] is hereby **GRANTED IN PART** and **DENIED IN PART**, as follows:

1. It is **HEREBY ORDERED** that Count I and Count II of Plaintiff's Amended Complaint [ECF No. 15] are dismissed with prejudice.

2. It is **FURTHER ORDERED** that Count III of Plaintiff's Amended Complaint [ECF No. 15] is dismissed without prejudice.

_____
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE